[Civ. No. 15635.   Second Dist., Div. One.   Mar. 20, 1947.]

ANGEL M. PEREZ, Appellant, v. BOARD OF POLICE
COMMISSIONERS OF THE CITY OF LOS ANGELES
et al., Respondents.

Robert W. Gilbert, Allan L. Sapiro, Herbert Thatcher and Joseph A. Padway for Appellant.

Ray L. Chesebro, City Attorney, William H. Neal, Bourke Jones and Roger Arnebergh, Assistant City Attorneys, for Respondents.

DORAN, J.—In the within action, plaintiff sought a temporary injunction to restrain the Board of Police Commissioners of the City of Los Angeles from enforcing a resolution of and by said board designed and intended to prevent police officers from being members of a police officer labor union. The trial court issued its order directing said Board of Police Commissioners to appear and show cause why, "they and each of them, should not be enjoined and restrained from attempting to enforce, or taking any steps to, or from giving any order or instruction to enforce," the above-mentioned resolution. A demurrer was interposed to the complaint; pending the hearing and determination of the order to show cause, a temporary restraining order was granted as prayed for. Following the hearing on the order to show cause, the demurrer was sustained without leave to amend. From the judgment of dismissal that followed, plaintiff appealed. Upon the posting of a bond in the sum of $500, defendants were "restrained from enforcing or taking any steps to enforce," the above-described resolution of said Board of Police Commissioners pending the appeal.

The complaint, in substance, is based on the contention that said board was without power to adopt such resolution; that said resolution is unconstitutional and therefore void. Damages in the sum of $50,000 also are sought.

More particularly, the complaint alleges that plaintiff is a member of the Police Department of the City of Los Angeles; that as such, has acquired "and now owns and enjoys certain seniority rights and insurance and pension rights which are

of great monetary and other value, to-wit, of the value of many thousands of dollars, all of which said rights are vested property rights belonging to plaintiff. That plaintiff is, and was for a long time prior to March 12, 1946, a member of a labor union, to-wit, Los Angeles Police Department Local Union No. 665 of the American Federation of State, County and Municipal Employees, affiliated with the American Federation of Labor, hereinafter referred to as 'Local 665'; that said labor union is comprised only of members who are police officers of the Los Angeles Police Department, of which plaintiff is a member, as aforesaid; that the American Federation of State, County and Municipal Employees, which, in turn, as a national labor union comprised of public employees, grants charters to local unions having as members, various employees of States, Counties and Municipalities throughout the United States of America, some of which employees are not members of any police force, nor employees of the City of Los Angeles; . . .

"That approximately 800 police officers, members of the Police Department of the City of Los Angeles, are members of said Local 665. . . ."

The above-mentioned resolution of the Board of Police Commissioners is as follows:

### "RESOLUTION"

"WHEREAS, police officers are something more than mere employees; they are in fact officers of the city; and

"WHEREAS, such officers should remain free of all obligations to any union, group or association that might impair their complete freedom and independence in matters of law enforcement where controversies exist between employers and employees, or between or among labor organizations; and

"WHEREAS, a divided responsibility would occur if police officers of this city should accept membership in a union or association in any manner controlled, governed or influenced by or connected with a parent organization or federation which is not a constituent part of our city government, composed exclusively of city employees, and designed only to serve the interests of this city; and

"WHEREAS, in the event of controversies between labor and industry, or jurisdictional disputes among labor organizations, resulting in disorder, membership in labor organizations would not be conducive to that freedom on the part of police officers that the public interest demands; and

"WHEREAS, any provision in the constitution, by-laws, rules or regulations of a labor organization providing that the first duty of a police officer shall be to the city, or that no police officer shall go on strike against the city, would be wholly ineffective to confer protection to the city against either amendment to or violation of such provisions. For a law enforcement officer to strike against government would be intolerable, and membership in any organization rooted in or influenced by any federation from the outside would tend to destroy the fibre of independence and freedom that must be preserved; Therefore,

"BE IT RESOLVED by the Police Commission of the City of Los Angeles, California, that:

"1. No police officers of the Los Angeles Police Department shall hereafter be or become a member of any Police Officer's organization in any manner identified with any trade association, federation or labor union which admits to membership persons who are not members of the Los Angeles Police Department, or whose membership is not exclusively made up of employees of the City of Los Angeles. Any Police Officer now a member of such union shall have thirty (30) days from this date within which to disassociate himself from such organization.

"2. No association of police officers of the City of Los Angeles shall be affiliated with any trade association or labor union which admits to membership persons who are not employees of the City of Los Angeles.

"3. Except as above stated nothing herein shall be deemed to reflect upon labor organizations generally nor shall this rule prevent or preclude members of the Police Department from associating themselves together with or within an organization of employees of the City of Los Angeles or to apply to the Chief of Police, the Police Commission, the City Council or the Mayor, or any other governmental agency of the City of Los Angeles, in person or through representatives of their choice, for redress of grievances.

"Adopted by the BOARD OF POLICE COMMISSIONERS at regular meeting, Tuesday, March 12, 1946.

/s/ ARTHUR G. BARAW—Secretary."

Quoting from appellant's opening brief, appellant contends:

"1. The Resolution of March 12, 1946, requiring appellant to renounce his membership in the particular labor organiza-

tion involved in this case as a condition of continued employment as a city policeman is unreasonable and arbitrary and therefore beyond the limited power of the Board of Police Commissioners to make and enforce 'necessary and desirable rules and regulations' for the management of the Police Department.

"2. The City is forbidden by the 'equal protection' and 'class legislation' provisions in the Federal and State Constitutions to deny equal opportunity of employment to persons qualifying as police officers who desire to belong to such a labor union.

"3. The Resolution is an unconstitutional impairment of Los Angeles police officers' rights of free speech, peaceable assembly, and to petition for redress of grievances, guaranteed by the Federal and State Constitutions.

"4. The Resolution amounts in effect to a bill of attainder.

"5. The Resolution is an unconstitutional deprivation of the property of Los Angeles police officers without due process of law."

Appellant concedes that, "The general authority to control and manage the Police Department of the City of Los Angeles is conferred upon the five-man Board of Police Commissioners, respondent herein. (Los Angeles City Charter, §§ 70 and 71.) Section 78 of the city charter invests the board of each department, including the Board of Police Commissioners, with specific power "to supervise, control, regulate and manage the department and to make and enforce all *necessary and desirable* rules and regulations therefor. . . ." (Italics included.) It is argued, however, that this power is limited by section 202 of the charter. Section 202, subdivision (1) provides: "The right of an officer or employee of the Police Department to hold his office or position and to the compensation attached to such office or position is hereby declared to be a substantial property right of which he shall not be deprived arbitrarily or summarily, nor otherwise than as herein in this section provided."

In connection with contention No. 1, which refers to the action of the Board of Police Commissioners as "unreasonable and arbitrary," appellant argues that,

"It should be borne in mind that appellant is not complaining of a departmental regulation against striking or even threats of striking, but rather a prohibition against belonging to an organization which is dedicated to bettering the economic

status of policemen by constructive methods adapted to their special obligations to the department.

"While the possibility of favoritism or preference being shown within the Department because of union membership was not enumerated in the preamble to the Resolution as a motivating factor for adoption of this rule, it should be noted that the danger of such abuse is no greater in the case of union membership than in circumstances involving membership in any fraternal or religious organization."

It is also argued in support of the same contention that, "In the present case, the real aim of the Resolution is to prevent policemen from exercising the general right of public employees to form or join *bona fide* labor organizations or associations of their own choosing as a concomitant of their rights of free speech, free assembly and petition guaranteed by the Federal and State constitutions." And concludes with ·the proposition that, "The Resolution of March 12, 1946, improperly discriminates against otherwise qualified city employees because of union membership alone without establishing that any rational connection exists between such membership and lack of competency as a police officer."

Respondent concedes, "that the rule-making power of the Board of Police Commissioners may not be exercised arbitrarily and that some rational connection must exist between an act which the Board compels a police officer to refrain from doing and his service as a police officer. However, the rule is firmly established that what is necessary and desirable is for the Board to determine and if there is any. substantial basis for upholding the action of the Board it will be sustained." Appellant, on the contrary, takes the following erroneous position, "Thus, to be valid, the rule in question must be found by the court to be *both* 'necessary' *and* 'desirable' . . . , as well as 'reasonable'." (Italics included.)

The law is well settled that in such circumstances, the question as to whether such a rule is "necessary and desirable" is not a judicial question. The courts are not charged with the responsibility of determining the wisdom of the rule. That question was for the board to determine. And as the trial judge observed, "That the board deemed the rule desirable is evidenced conclusively by its adoption." In a memorandum opinion by the trial judge appear the following pertinent observations:

"In the case of *Cleu* v. *Board of Police Commissioners,* 3

Cal.App. 174 [84 P. 672], the court, in upholding a rule of the San Francisco Police Commission which resulted in a police member being dismissed for failure to pay his debts, and after quoting charter provisions similar to those quoted herein, said:

" 'It is from the above provisions of the charter that the board of police commissioners must derive their power to make the rule in question. *If the rule concerns the government and discipline of the police department and is reasonable, it must be held to be valid.* The board had the right to make all reasonable rules to secure efficiency and good service in the department.

" '. . . *A wide discretion must be lodged in the board in determining what conduct on the part of members of the department is injurious to the efficiency of the department.* We cannot say that the rule here is not reasonable, and does not tend to promote the efficiency of the department.' (Emphasis mine.)

"This latter part was later quoted with approval in *Donovan* v. *Board of Police Commissioners,* 32 Cal.App. 392, 403 [163 P. 69], and again in *Irwin* v. *City of Los Angeles,* 3 Cal. App.2d 495, 498 [39 P.2d 851].

"In *Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674, 679 [62 P.2d 1047], in considering a question whether the discharge of a civil service employee was in violation of his rights to freedom of speech and of the press, and arbitrary, the court said:

" 'The right which is involved here is not that which petitioner thinks has been denied him, but is the right of respondents to exercise a reasonable supervision over city employees, to the end that proper discipline may be maintained and that activities among employees be not allowed to disrupt or impair the public service. Such is not only the right but the duty of the city and its several departments. In the exercise of this duty they must be allowed a wide discretion and their acts are not subject to review by the courts until they have reached the point of illegality.'

"The rule adopted by the resolution here in question does not on its face appear unreasonable or arbitrary in the light of the foregoing authorities. Nor is it in violation of any constitutional right of police officers. If the rule is necessary and reasonable it cannot be charged with wrongfully depriving the police members of any constitutional right. All such

rights are relative.  Nor does the rule amount to a bill of attainder, nor does it produce or inflict any of the incidents of such a legislative act.  It was the result of a decision by the board in the exercise of that wide discretion which is accorded to them.  Neither this court nor any judge thereof has the power to substitute its or his contrary views as to the propriety, necessity, desirability or reasonableness of the rule.  The rule having been created by the Board under and within its charter powers, and no appearance of unreasonableness or arbitrariness or unconstitutionality manifesting itself therein, it must be concluded that such rule cannot have reached the . point of illegality and subject to review and annulment by the courts either by direct action or by means of injunction against enforcement thereof.''   (Italics included.)

It may be assumed, as appellant contends, and noted above among appellant's arguments, that the union in question is, ''dedicated to bettering the economic status of policemen by constructive methods adapted to their special obligations to the department,'' but, the Board of Police Commissioners is not bound to accept such a movement as a valid and feasible function of government.  And, with regard to the likelihood of, ''favoritism or preference,'' as a possible reason for the adoption of the rule and that, ''the danger of such abuse is no greater in the case of union membership than in circumstances involving fraternal or religious organization,'' it should be noted that such a comparison, for reasoning purposes, proves nothing.  There is no resemblance between the things compared.  Appellant's contention as noted above that, ''the real aim of the resolution is to prevent policemen from exercising the general right of public employees to form or join *bona fide* labor organizations or associations of their own choosing as a concomitant of their rights of free speech,'' obviously is an assumed premise hence, any conclusion to be drawn therefrom is of no logical value in the circumstances.

█ It is also argued in substance, with regard to contention No. 1 that, section 202 of the charter, which provides, ''The right of an officer or employee to hold his office . . . is hereby declared to be a substantial property right of which he shall not be deprived arbitrarily or summarily, nor otherwise than as herein in this section provided,'' is a limitation on section 78 which vests the Board of Police Commissioners, ''with specific power to supervise, control, regulate and man-

age the department and to make and enforce all necessary and desirable rules and regulations therefor." There is no merit to the argument. Assuming, but by no means deciding, that the people through the medium of the Constitution have vested in municipal corporations the power to define and thereby determine property rights, there is no conflict between these two provisions of the charter. That the Board of Police Commissioners has the power to adopt necessary and desirable rules, there can be no question. The charter further provides for the trial of anyone accused of violating such rules and thus prevents arbitrary action that would summarily deprive an employee of the so-called "property right." By no process of reasoning can the provisions of section 202 be construed as a limitation on the provisions of section 78.

It is also argued in support of contention No. 1 that, "No rational connection exists between union membership and lack of competency as a police officer." It is urged that this general ban against membership in any union of police officers affiliated with a federation or labor organization, including nonpolicemen or nonemployees of the city of Los Angeles in its ranks, disregards the extent of local autonomy which exists and brushes aside "any provision in the constitution, by-laws, rules or regulations of a labor organization that the first duty of a police officer should be to the city, or that no police officer shall go on strike against the city" as "wholly ineffective to confer protection to the city against either *amendment to* or *violation* of such provisions." (Emphasis included.)

Whether a rational connection exists between union membership and lack of competency as a police officer, obviously, is a matter of opinion. And the question was solely one for the Board of Police Commissioners to determine. Regardless of what the constitution and by-laws of any organization might provide for or against, it is idle to argue that such constitution and by-laws cannot be changed by amendment. Moreover, it was for the Board of Police Commissioners, as the representatives, agents and servants of the people, to determine what the first duties, indeed, all of the duties, of a police officer should be. It should be noted also, that the Board of Police Commissioners probably took into account the fact that labor unions are active politically, whereas civil service employees are prevented by law and as a condition of employment, from taking an active part in politics while on official duty or during working hours and, that means would be thus

provided for doing indirectly and with impunity, that which the law specifically prohibits.

■ Appellant's argument that the resolution here considered is arbitrary and unreasonable, may be considered only with relation to construction and interpretation. In this connection it is well settled that statutes must be given a reasonable construction. Whether the resolution of the Police Commission is reasonable therefore has reference only to the subject of construction and interpretation. If within reason it can be held to coincide with the Constitution, is not in conflict with other legally constituted authority and is free from ambiguity, it is reasonable within the meaning and application of the above mentioned rule of construction. And it is the duty of the courts, in such circumstances to uphold it. ■ Courts are not concerned with the wisdom, propriety or practicability of a statute, rule, or regulation. Such questions are addressed to those responsible for their adoption.

With regard to contention No. 2, appellant argues that "The right of persons to seek employment without being subject to arbitrary action and improper discrimination has been frequently upheld by the courts in recent times as against private organizations." And, that, "The fact that the government is the employer does not alter this result." (Citing cases.) It is also argued that, "By singling out members of certain labor organizations, such as appellant, and threatening to deprive them of employment, seniority rights, and insurance and pension benefits without regard to their individual qualifications and capabilities to satisfactorily and faithfully perform the duties of their office, the City of Los Angeles denied them equal protection of the laws, in contravention of the Fourteenth Amendment of the Constitution of the United States and Article I of our State Constitution."

■ There is no denial of equal protection of the laws nor is any contravention of the fourteenth amendment even suggested, in the action of the Board of Police Commissioners. Nothing can be gained by comparing public employment with private employment; there can be no analogy in such a comparison. The members of the Board of Police Commissioners and the members of the police department are public servants; the basis and conditions of the employment of both are fixed by law and not by private contract. In the case of *Miami Water Works Local No. 654* v. *City of Miami,* —— Fla. ——

[26 So.2d 194], substantially the same issues were involved. There the court declared in part:

"The charter of the City of Miami contains no provision which even remotely suggests that the duty elected or appointed officials of the City are under an obligation or duty to consult with the plaintiff union, or anyone else, in determining fitness for employment or promotion, or in fixing hours, wages, or conditions of employment of its employees. Indeed, all provisions of the charter are impliedly to the contrary. All employees of the City are under a civil service system established and created by Chapter 19981, Special Acts 1939, as amended by Chapter 21385, Special Acts 1941, Laws of Florida. . . ." See, also, *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 154 F.2d 932. *Fraternal Order of Police* v. *Harris*, 306 Mich. 68 [10 N.W.2d 310] ; *City of Jackson* v. *McLeod,* —— Miss. —— [24 So.2d 319].

In the case of *Congress of Industrial Organizations* v. *City of Dallas,* (Tex.Civ.App.) 198 S.W.2d 143, decided in 1946, the court was concerned with substantially the same questions that are presented in the within appeal. The city of Dallas had adopted an ordinance declaring it to be an offense, "for any officer, agent or employee, or any group of them, of the City of Dallas to organize a labor union, organization, or club of city employees, or to be or become a member thereof," and, as noted by the court, "this without regard to whether such local union is affiliated with any other local, state, national or international body or organization, etc." The court observed, "A review of the case law on the subject reveals that courts, the country over, have uniformly sustained all governmental laws and regulations of the nature, intent and purpose of the ordinance of the city of Dallas now under consideration. The cases are so numerous that to do more than make a mere reference or an occasional excerpt would lengthen this opinion out of bounds" (citing and quoting cases). . . . "Reported cases reveal many futile attempts by labor unions to organize among governmental employees." (Citing cases.)

As to contention No. 3, it is argued, "The right to discuss and inform people concerning the advantages of union affiliation and to form and join a labor organization is an exercise of the rights of free speech, assembly, and petition guaranteed all citizens"; "The rights of employees of the federal government and of states, counties and municipalities to form or join labor organizations as an exercise of the rights of free

speech, assembly, and petition is generally conceded"; and, that, "The surrender of constitutional rights may not lawfully be imposed as a condition precedent to public employment."

A complete answer to the above contention is fully set forth in the following cases: *McAuliffe* v. *Mayor etc. of City of Bedford*, 155 Mass. 216 [29 N.E. 517]; *Christal* v. *Police Commission of the City and County of San Francisco*, 33 Cal.App.2d 564 [92 P.2d 416]; *Raycraft* v. *Harrison*, 108 Ill.App. 313, 316; *Hayman* v. *City of Los Angeles*, 17 Cal.App.2d 674 [62 P.2d 1047].

The action of the Board of Police Commissioners raises no constitutional questions. However, as noted above, appellant seeks to inject the issue of free speech and free assembly. It is urged, in this connection, that "The State's power to regulate union activity with a view to protecting the public interest must not trespass upon the domain set apart for free assembly and free speech." It should be emphasized that, in no sense, does the resolution even suggest any attempt to "regulate union activity." It relates only to "rules and regulations for the police department," for which, as hereinbefore noted, the city charter provides.

In support of the argument on free speech, appellant cites *Herndon* v. *Lowry*, 301 U.S. 242 [57 S.Ct. 732, 81 L.Ed. 1066]. The case is not in point. The court was therein concerned with the construction of a penal statute of the state of Georgia and determined, with regard to the code section under consideration that no reasonably ascertainable standard of guilt is prescribed. So vague and indeterminate are the boundaries thus set to the freedom of speech and assembly that the law necessarily violates the guarantees of liberty embodied in the fourteenth amendment." Nevertheless, the court adhered to an earlier decision (*Gitlow* v. *New York*, 268 U.S. 652 [45 S.Ct. 625, 69 L.Ed. 1138]), but noted a distinction. Referring to the latter case, the court however made the following comment which is especially pertinent to the situation here considered, "And it was in connection with the statute there involved that the court quoted language relied upon below and in argument here from *People* v. *Lloyd*, 304 Ill. 23 [136 N.E. 505], to the effect that a state is not compelled to delay adoption of such preventive measures until the apprehended danger becomes certain." The attempt to raise the issue of free speech and free assembly in the within action is unavailing.

In support of contention No. 4, it is argued in substance that the resolution of the Board of Police Commissioners here considered, contemplates punishment without a trial; that "perpetual exclusion from a chosen vocation is 'punishment' within the meaning of that term as used in defining bills of attainder."

In no sense can the action of the commission be held to be in effect a "bill of attainder." As heretofore pointed out, the city charter provides for a trial, and the rules and regulations here considered constitute no interference with orderly processes of the law.

And finally, with regard to contention No. 5, appellant argues in substance that, as a result of enforcement of the resolution complained of, "Appellant and others stand to lose their positions as police officers with the City of Los Angeles, and accrued benefits such as seniority, insurance and pension rights." And that, "Among the 'fundamental principles of liberty and justice which lie at the basis of all our civil and political institutions' . . . is the concept of 'due process' which requires that condemnation shall be rendered after a fair and impartial trial."

The above argument is without merit. Any attempt to inject, "due process," as an issue in the within controversy is also unavailing. As the court declared in *Ludolph* v. *Board of Police Commissioners*, 30 Cal.App.2d 211, 216 [86 P.2d 118]: "The right to an office or of employment with the government or any of its agencies is not a vested property right, and removal therefrom will not support the question of due process." (Citing cases.)

A consideration of the briefs herein and of the oral argument as well, reveals that, although appellant's over all argument sings the praises of the Constitution on the one hand nevertheless, it presages its destruction on the other. Notwithstanding the fact that the named defendants are individuals and make up the Police Commission of the City of Los Angeles, actually, the suit herein is against the people. It disputes the power of the people to establish and conduct the government, for it seeks to control governmental processes by indirection. For example, in the oral argument appellants stated, "It is our contention that the nature of this organization is such that it will promote efficiency and make for better police officers." It is common knowledge, that the people have sought no assistance from the labor union referred to herein, or any

other organization. And, permission by public officials to establish such an affiliation would be a direct violation of the Constitution, the effect of which would, in turn, defeat the will of the people. It should be emphasized that the scheme of government basically is created by the Constitution; it is the source of government. Offices and agencies are established; powers are authorized; duties are imposed on individuals and governmental agencies, all for the purpose of carrying out the will of the people. All public officials, whether national or state, executive, administrative or judicial, and all public employees, are public servants. There is but one master, the people. Hence, the common expression that, ''This is a government of laws and not of men.'' The allegiance of all public servants is to the people; obviously there can be neither alienation nor division of this allegiance if constitutional government is to continue. The police commission, therefore, not only had the power but it was the manifest duty to adopt and enforce the resolution herein considered. The failure to do so in effect would have amounted to a surrender of power, a dereliction of duty, and a relinquishment of supervision and control over public servants it was their sworn duty to supervise and direct.

Conditions of public employment are determined and established by the people, either directly through the medium of the Constitution, or indirectly, by vesting power and authority in governmental agencies or offices for such purposes. For example, section 18 of article VI of the state Constitution provides that, ''The Justices of the Supreme, and of the District Court of Appeal . . . shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected or appointed.'' Manifestly, the acceptance of such a position results in the surrender of certain liberties. The people however are concerned with the public good and not with the ambition or desires of the individual, and conditions of public employment are determined accordingly. In this process of state government there is no conflict with the will of the people as expressed in the federal Constitution.

As pointed out in *Congress of Industrial Organizations* v. *City of Dallas,* hereto referred to, ''Courts, the country over, have uniformly sustained all governmental laws and regulations of the nature, intent and purpose of the ordinance of

the City of Dallas.'' And the same observation applies with equal force to the resolution of the Police Commission of the City of Los Angeles herein considered.

The judgment and order are affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied April 7, 1947, and appellant's petition for a hearing by the Supreme Court was denied May 15, 1947. Carter, J., voted for a hearing.