498 P.2d 578

**BOARD OF EDUCATION OF the SCOTTS-
DALE HIGH SCHOOL DISTRICT
NO. 212 et al., Appellants,**

v.

**SCOTTSDALE EDUCATION ASSOCIA-
TION, Appellee,**

**Lawrence K. Nelson et al., Appellants
in Intervention.**

· No. 1 CA–CIV 1994.

Court of Appeals of Arizona,
Division 1,
Department B.

June 26, 1972.

Rehearing Denied Oct. 20, 1972.

Review Granted Nov. 14, 1972.

**506**

Moise Berger, Maricopa County Atty. by Albert Firestein, Chief Civil Deputy Atty., Phoenix, for appellants.

Lewis & Roca by John P. Frank and Mary M. Schroeder, Phoenix, for appellants in intervention.

Harrison, Myers & Singer by Mark I. Harrison, Phoenix, for appellee.

JACOBSON, Judge.

This appeal questions the right of a school board to enter into a "collective bargaining agreement" with a teachers' organization purporting to bind all teachers in the school district as to wages, hours, conditions of employment, and methods of future negotiations between the parties.

The particular vehicle by which this appeal reaches us is by way of a special action filed in the Maricopa County Superior Court on February 23, 1972, by the appellee, Scottsdale Education Association (SEA) against the appellants, the Boards. of Education of Scottsdale High School District No. 212 and Scottsdale Elementary School District No. 48 and the individual members thereof (collectively hereinafter referred to as the Board), seeking relief in the nature of mandamus to compel the Board to follow an "impasse" procedure called for by a "Professional Negotiation Policy" executed by SEA and the Board in 1971. On March 22, 1972 the trial court by way of minute entry indicated it was going to grant SEA the relief requested. On March 28, 1972, a taxpayer group attempted to intervene. By formal written judgments entered on April 5 and 6, 1972 the trial court denied the application to intervene, denied motions for new trial and objections to judgment and directed the Board to comply with the impasse procedures set forth in the policy agreement of 1971 and further prohibited the Board from negotiating contracts for the school year 1972–73 with all teachers in the school district, including those not belonging to SEA without first complying with the impasse procedure. This appeal was filed on April 6, 1972 and due to the importance of the issues presented and the limitations of time, this court granted an accelerated appeal. After oral arguments.

in that accelerated appeal procedure, this court entered an order denying the Board's request to stay the effect of the trial court's order.

The factual background giving rise to this litigation is as follows: In the spring of 1970, various labor disputes arose between the teachers employed by the Scottsdale School District and the Board concerning wages, salaries, hours of employment, and working conditions of teachers. In an attempt to settle these disputes the Board agreed to deal with a teachers' representative organization to be chosen by election of the teachers. An election was then held to determine whether SEA or the Scottsdale Federation of Teachers, AFL–CIO, would be the *exclusive* bargaining agent for *all* teachers in future negotiations with the Board. SEA won that election.

Thereafter in the fall of 1970, SEA and the Board entered into negotiations culminating in August, 1971, in the agreement here under attack. The effective termination date of that agreement is July 31, 1972. This agreement, designated a "Professional Negotiation Policy", is before the court in pamphlet form consisting of 65 pages and deals with such diverse matters as the amount of time the president of SEA may spend on association business with full pay (80 days), the size of classes, class books to be used, grievance procedures, salaries, hours, teacher selection, transfer of teachers, evaluation of teachers, reprimand of teachers, and the method to be followed in future negotiations.

Between January 4, 1972 and February 9, 1972 the parties through their negotiating teams, entered into negotiations for a "successor agreement" for the school year 1972–73. Among the items which were negotiated were salaries for the 1972–73 school year. On February 9, 1972, the Board advised SEA that the Board's offer on salaries be either accepted or the "impasse" procedure set forth in the agreement would be invoked. The impasse procedure outlined by the agreement calls for the convening of a three-member impasse panel consisting of one member appointed by the Board, one member appointed by SEA and one member selected by the first two. This panel is empowered to consider the matter upon which agreement cannot be reached and to report its findings and recommendations to the parties. These findings and recommendations are not binding upon the parties.

SEA agreed impasse had been reached on the issue of the salaries and notified the Board of its selection of its impasse panel member. However, on February 15, 1972, the Board met and in essence disavowed the 1971 agreement concerning impasse, unilaterally set teachers' salaries for the 1972–73 school year, and indicated its intentions to issue teachers' contracts for the coming school year based on such salaries. The special action by SEA to compel the Board to comply with the impasse procedure and to restrain the Board from entering into teachers' contracts for the year 1972–73 followed.

■ We note initially that the only standing intervenors have before this court is to question the propriety of the trial court's action in denying them permission to intervene. In view of the lateness at which they sought to intervene in the trial (after minute entry of judgment) and the adequacy of representation by the named defendants, we find no abuse of discretion by the trial court in denying their motion to intervene. *See* Mitchell v. City of Nogales, 83 Ariz. 328, 320 P.2d 955 (1958).

Our ruling in this regard may be somewhat academic, as intervenors have filed herein a "joint brief" with appellants and counsel for intervenors was appointed as a special deputy county attorney to argue the matter on appeal. It would thus appear that the intervenors' interests are more than adequately represented in this appeal.

■ The Board first attacks the procedure of SEA in bringing this suit as a "special action", contending that in essence, what SEA is asking for is either "a clear, unadulterated old-fashioned labor in-

junction" or an "action for specific performance of a contract in a labor situation". While this attack is not without some merit, because of the press of time on all parties requiring expeditious handling of this matter, and because of the importance of this issue to persons other than the immediate litigants before the court, we prefer to side-step the procedural problems and deal directly with the issues presented on the merits.

Upon analysis, we believe the merits of this action first present the question of whether the teachers may organize themselves for the purposes of collective bargaining.

■ The answer to this question seems to be relatively well settled—all citizens, be they public employees or not, have the right to peaceably assemble and organize for any proper purpose and to present their views to any public body, such a right being embodied within the first amendment to the United States Constitution. City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539 (1947); Norwalk Teachers' Ass'n. v. Board of Education, 138 Conn. 269, 83 A.2d 482 (1951). See American Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912 (1948).

■ We therefore hold that the teachers of the Scottsdale School Districts could legally organize themselves and designate a representative (SEA) to carry out their collective wishes, including bringing to the attention of the Board their positions concerning conditions of employment.

Having said this, may the Board bind itself with a collective bargaining agreement with that representative? We believe the answer to this question turns first on a definition of "collective bargaining" and second upon the statutory authority of the Board to engage in that so-defined term.

From our reading of the cases, the term "collective bargaining" can run the gauntlet from a teacher making known to the Board his or her desires concerning placing a blackboard in the classroom, to discussing and conferring with the Board as to a teachers' salary scale, to an agreement setting forth in exacting details the workings of the school system.

The Board seems to contend, however, that any definition of "collective bargaining" is beyond the authority of the Board without specific legislation authorizing such procedure.

A.R.S. § 15–443 provides in part that: "[t]he board of trustees may . . . enter into contracts with and fix the salaries of teachers . . . for the succeeding year. The contracts of all certified employees shall be in writing . . .." Further, the Board is empowered by A.R.S. § 15–441 to "prescribe and enforce rules for the government of the schools . . ." and the "management" of the school is vested in the Board. A.R.S. § 15–545.

■ In our opinion, this power to hire teachers, fix their salaries and to control the operation of the school district, necessarily carries with it the implied power or authority, if the Board so desires, to consult and confer with an individual teacher in order for the Board to make a sapient judgment as to wages and working conditions. In this regard we see little difference between 1200 teachers individually making known their desires to the Board concerning their wages and working conditions, and a representative of those 1200 teachers making known the same desires.

As we stated in City of Springfield v. Clouse, *supra*:

"Organization by citizens is a method of the democratic way of life and most helpful to the proper functioning of our representative form of government. It should be safeguarded and encouraged as a means for citizens to discuss their problems together and to bring them to the attention of public officers and legislative bodies. Organizations are likewise helpful to bring public officers and employees together to survey their work and suggest improvements in the public service as well as in their own working conditions.

\* \* \* \* \* \*

" 'Now, collective bargaining means a good many things. There is [sic] many types of collective bargaining. When you sit down at a table, representative of the employees of the city sits down at a table and discusses the matter concerning employees relations between an employee and the city, that is collective bargaining.'

"This is confusing collective bargaining with the rights of petition, peaceable assembly and free speech. Certainly public employees have these rights for which Mr. Wood was contending; and can properly exercise them individually, collectively or through chosen representatives, subject, of course, to reasonable legislative regulation as to time, place and manner in the interest of efficient public service for the general welfare of all the people." 206 S.W.2d at 542, 543.

This same conceptual idea of "collective bargaining" was approved in State Board of Regents v. United Packing House, etc., Iowa, 175 N.W.2d 110 (1970):

" 'A public employer's general power to carry out its assigned functions is sufficiently inclusive to permit *consultation* with all persons affected by those functions. . . . This *consultation* serves the public interest by permitting informed governmental action *without abridging governmental freedom of action.*' " (Emphasis added.) 175 N.W.2d at 112, 113.

■ For other cases holding that public employers have the implied power to consult and confer with representatives of their employees, *see* N. J. Turnpike Auth. v. Amer. Fed. of State, etc., Emp., 83 N.J. Super. 389, 200 A.2d 134 (1964); Norwalk Teachers' Ass'n v. Board of Education, *supra*; Nutter v. City of Santa Monica, 74 Cal.App.2d 292, 168 P.2d 741 (1946); Fellows v. La Tronica, 151 Colo. 300, 377 P. 2d 547 (1962); Philadelphia Teachers' Assoc. v. La.Brum, 415 Pa. 212, 203 A.2d 34 (1964); City of Pawtucket v. Pawtucket Teachers' Alliance, 87 R.I. 364, 141 A.2d 624 (1958).

■ We therefore hold that the Board has authority to enter into "collective bargaining" with a representative of the teacher-employees when that "collective bargaining" is in the context of meeting and consulting with. However, the decision of whether the Board desires to enter into such a "collective bargaining" situation remains for the Board, and actions to compel or coerce the Board to so bargain collectively against its better judgment are improper. The Communications Workers of America v. Arizona Board of Regents, 17 Ariz.App. 398, 498 P.2d 472 (filed this date). State Board of Regents v. United Packing House, etc., *supra*.

Does this same statutory authority carry with it implied power to enter into a binding "collective bargaining agreement"? SEA contends that the case of Local 266, etc. v. Salt River Project, 78 Ariz. 30, 275 P.2d 393 (1954) requires this question to be answered in the affirmative. While this case granted employees of the Salt River Project both the right to enter into a collective bargaining agreement and the right to strike, the court was careful to limit its opinion to the unique governmental body under consideration. The court stated:

"As we have pointed out the case at bar does not present the issue of the compatability of a collective bargaining agreement with provisions of a civil service or other statutory scheme of employment. We reserve judgment on this question." 78 Ariz. at 37, 275 P.2d at 398.

And again:

"Our judgment extends only to this governmental unit. We make no decision as to the status and rights of other municipal corporations." 78 Ariz. at 44, 275 P.2d at 403.

It is therefore apparent that the *Salt River Project* case is not authority in the setting of a school board vis-a-vis a teachers' organization.

In answering this question, again it is important to keep in mind what type of collective bargaining agreement we are referring to. It is the type of agreement common in private industry which, in an industrial sense, is not a contract of employment, but a trade agreement entered into between the employer and a representative of the employees dealing with wages, hours, working conditions, and such other matters as may be mutually agreed upon, including the exclusiveness of the bargaining representative. J. I. Case Co. v. National Labor Rel. Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944).

All of the cases brought to our attention or located by this court, with one exception, hold that in the absence of legislative authority, a governmental body may not enter into such a binding collective bargaining agreement, as that term has been defined. A summary of that case law is:

"The reasoning of most of the reported cases is that the employer-employee relationship in government is a legislative matter which may not be delegated. Such contracts if permitted to stand would result in taking away from a municipality its legislative power to control its employees and vest such control in an unelected and uncontrolled private organization (a union)." Fellows v. La Tronica, *supra*, 377 P.2d at 550.

The reasoning of City of Springfield v. Clouse, *supra*, is illustrative:

"Under our form of government, public office or employment never has been and cannot become a matter of bargaining and contract. (Citations omitted.) This is true because the whole matter of qualifications, tenure, compensation and working conditions for any public service, involves the exercise of legislative powers. Except to the extent that all the people have themselves settled any of these matters by writing them into the Constitution, they must be determined by their chosen representatives who constitute the legislative body. It is a familiar principle of constitutional law that the legislature cannot delegate its legislative powers and any attempted delegation thereof is void. (Citations omitted.) If such powers cannot be delegated, they surely cannot be bargained or contracted away; and certainly not by any administrative or executive officers who cannot have any legislative powers. Although executive and administrative officers may be vested with a certain amount of discretion and may be authorized to act or make regulations in accordance with certain fixed standards, nevertheless the matter of making such standards involves the exercise of legislative powers. Thus qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of lawmaking and cannot be the subject of bargaining or contract." 206 S.W.2d at 545.

For other cases holding that a governmental body cannot bind itself by a collective bargaining agreement, in absence of specific statutory authority, *see* International U. of Op. Eng. Loc. 321 v. Water Works Board, 276 Ala. 462, 163 So.2d 619 (1964); N. J. Turnpike Auth. v. Amer. Fed. of State, etc., Emp. *supra*; Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So.2d 194 (1946); Wichita Public School Emp. U., Local No. 513 v. Smith, 194 Kan. 2, 397 P.2d 357 (1964); Mugford v. Mayor and City Council, 185 Md. 266, 44 A.2d 745 (1945); City of Alcoa v. International Broth. of Elec. Wkrs., 203 Tenn. 12, 308 S.W.2d 476 (1957).

Even Norwalk Teachers' Ass'n. v. Board of Education, *supra*, relied upon in the *Salt River Project* case and cited by SEA in support of its position that authority exists to enter into that collective bargaining agreement, makes it clear that it is not speaking of collective bargaining agreements as that term is used in private industry:

"There is no objection to the organization of the plaintiff as a labor union, but if its organization is for the purpose of 'demanding' recognition and collective

bargaining the demands must be kept within legal bounds. What we have said does not mean that the plaintiff has the right to organize for all of the purposes for which employees in private enterprise may unite, as those are defined in § 7391 of the General Statutes. Nor does it mean that, having organized, it is necessarily protected against unfair labor practices as specified in § 7392 or that it shall be the exclusive bargaining agent for all employees of the unit, as provided in § 7393. *It means nothing more than that the plaintiff may organize and bargain collectively for the pay and working conditions which it may be in the power of the board of education to grant."* (Emphasis added.) 83 A.2d at 486.

■ As previously indicated, the one exception to this line of cases is the decision in Chicago Div. of Ill. Ed. Ass'n. v. Board of Education, 76 Ill.App.2d 456, 222 N.E. 2d 243 (1966). We decline to follow this case, concluding that where, as in Arizona, the power to manage and control the affairs of the school district lies exclusively with the board of trustees, except where that power has been by specific legislation granted to someone else, the Board may not delegate that authority without specific legislative authorization. There is no question that Arizona has no such legislation in the context of public employee collective bargaining agreements.

■ Having concluded that this power to manage and control may not be diluted or delegated by the Board, does the 1971 agreement between the Board and SEA constitute such a delegation? We conclude it does. The present litigation is a case in point. Under the statutes of this state, the Board is granted the authority to employ and fix the salary of teachers. (A.R.S. § 15–443). However, when the Board on February 15, 1972, attempted to exercise that statutory power to fix salaries and to issue contracts of employment, SEA sought an injunction to prohibit it from doing so, contending that its contract with the Board prohibited the exercise of such statutorily

given duty. If the collective bargaining agreement has such effect, obviously the Board has delegated its right to fix salaries which it may not do. If on the other hand, the collective bargaining agreement merely sets a procedure to be followed before the Board may exercise the statutory power to fix salaries, it has limited the manner in which the Board may exercise its discretion in fixing salaries to a fixed procedure, a limitation, in our opinion, it may not legally impose upon itself. Norwalk Teachers' Ass'n. v. Board of Education, *supra.* As was stated in the case of School District No. 69 of Maricopa County v. Altherr, 10 Ariz.App. 333, 458 P.2d 537 (1969) (although in a different factual context):

> "A public office is considered a public agency or trust, created in the interest and for the benefit of the people, i. e., public officers, are servants of the people. (Citations omitted.) A public officer may not agree to restrict his freedom of action in the exercise of his powers, 43 Am.Jur. Public Officers § 295, and an agreement which interferes with his unbiased discharge of his duty to the public, in the exercise of his office, is against public policy and unenforceable.
>
> \* \* \* \* \* \*
>
> ". . . To hold otherwise and expose school trustees to potential liability for changing their minds in the public interest would be like stripping a judge of his cloak of judicial immunity when he exercises his discretion, be it right or wrong. Public policy dictates that a school trustee's fiduciary duty to the public be performed unfettered by threats of litigation." 10 Ariz.App. at 338, 339, 458 P.2d at 542–543.

It is, therefore, our opinion that the ultimate responsibility of controlling and managing the affairs of the school district rests with the Board and the Board may not by contract, dilute that responsibility or surrender the Board's legal discretion in how that responsibility is to be exercised. We, therefore, hold that the 1971 agreement between the Board and

SEA was without the power of the Board to enter into and is therefore void.

Nothing we have said by this opinion should be taken as meaning that the Board may not promulgate rules and regulations as authorized by A.R.S. § 15–441 for the conduct of the affairs of the school district which may embrace many of the items contained in the 1971 agreement.

Nor should this opinion be construed as limiting the power of the Board to enter into one written contract with a representative of a teachers' organization binding all members of that organization provided that the terms of that contract are within the statutory authority of the Board and contains no terms of employment which could not be included in a standard contract for individual teachers. State Board of Regents v. United Packing House, *supra*.

For the foregoing reasons, the judgment of the trial court is reversed, and the injunctive order of the trial court is quashed. Each party to this appeal shall bear its own costs.

HAIRE, C. J., Division 1, and EUBANK, J., concur.