### CLAYTON v. BERRY, Auditor.

CONSTRUCTION OF STATUTES—*Specific appropriations.*—When the legislature has directed what amount shall be set apart for certain specific expenditures or for the payment of certain debts, all executive and ministerial officers are bound to obey its directions.

COMMISSIONER OF CLAIMS—*Nature of findings.*—The findings of the commissioner of claims, appointed under act, approved, March 28, 1871, are not judgments against the State, but are only "in the nature of a judgment," which the commissioner shall make out and deliver to the claimant, who may file them with the Auditor of State, who shall draw his warrant on the treasurer, payable out of the moneys appropriated for that purpose.

AUDITOR—*Not to issue warrant when appropriation exhausted.*—Section 18 of Chap. 2, Gould's Digest, forbidding the Auditor from issuing a warrant when there is no appropriation to draw against, or when an appropriation has been exhausted, is not in conflict with the Constitution of 1868, but is in full force.

PETITION FOR MANDAMUS.

*W. W. Wilshire, A. H. Garland, R. A. Howard, B. C. Coblentz, E. W. Gantt, and T. D. W. Yonley,* for Petitioner.

*Montgomery, Attorney General,* for Respondent.

BENNETT, J.—On the 4th day of December, 1871, a petition was filed in the office of the clerk of this court, by Reuben Clayton, alleging that, on the 29th day of November 1871, he recovered a judgment, based upon militia claims, against the

State for one hundred and four dollars, before Samuel W. Mallory, a commissioner, appointed under an act of the General Assembly, approved March 28, 1871.

Said petition further alleging that on the 4th day of December 1871, he presented a certified copy of said judgment to J. R. Berry, Auditor of State, and requested said Auditor to issue a warrant on the treasury for the amount of the same, but the Auditor refused to issue said warrant; he therefore prays for a writ of *mandamus*, etc.

The Auditor, on the same day, waiving notice, enters his appearance and files his response to the petition, stating:

*First*, That the appropriation made, by the act to provide for the payment of property taken for the use of the militia, etc., has been expended, and there is no other appropriation out of which the claim can be paid or against which a warrant can issue.

*Second*, That the petitioner has not presented to him any judgment against the State, whereby he, as Auditor, is obliged by any law to issue warrants upon.

To which response petitioner files a demurrer, saying the response does not show sufficient matter, in manner and form, to preclude him from having the writ awarded as prayed.

Shall the demurrer be sustained?

It must be conceded that the people, in framing the Constitution, committed to the legislature, the law-making power of the State. This is the fundamental principle in the political organization of all American States. The legislative power is the authority, under the Constitution, to make laws and to alter and repeal them. What laws shall be enacted must depend upon legislative wisdom, discretion and confidence.

Under our Constitution the legislature shall also provide for raising revenue sufficient to pay the expenses and the indebtedness of the State. It has the control of these public moneys, after they are collected, and provides for disposing of them for the public good and for public purposes. What is

for the public good, and what are public purposes, are questions which it must decide upon its own judgment; but when it has decided and directed what amount shall be set apart for certain specific expenditures, or for the payment of certain debts, all executive and ministerial officers are bound to obey its direction.

*Article X, Sec.* 8, of the Constitution of the State says: "No money shall be paid out of the treasury until the same shall have been appropriated by law." Webster has defined appropriation to be, "the act of setting apart or assigning to a particular use." Chitty says: "It is the application of the payment of a sum of money by a debtor to a creditor to one of several debts, which are due from the former to the latter." *Law*, in the sense in which the word is here employed, is the rule of civil conduct, or statute, which the legislative will has prescribed.

The expression, "appropriated by law," means the act of the legislature setting apart, or assigning to a particular use, a certain sum of money to be used in the payment of debts or dues from the State to its creditors. *Art. V. Sec.* 20, of the Constitution also says, "No portion of the public funds or property shall ever be appropriated by virtue of any resolution. No appropriation shall be made except by a bill duly passed for that purpose."

The people, in their sovereign capacity, have said that no money shall be paid out of the treasury, until their representatives, by a solemn enactment, have assigned and set apart the public revenue of the State for specific purposes.

Counsel insist that there has been such an appropriation made to pay militia claims. True, one hundred and twenty-five thousand dollars were set aside for that purpose, but the auditor says it has been taken up by claims, heretofore allowed, and there is no fund upon which to draw a warrant. Still counsel urge that it was the intention of the law-making power to appropriate enough money to pay *all* the claims which might have been assessed against the State for militia

purposes. Where such an intention can be drawn from, we
are unable to discern. Lord Coke says: "If any section of a
law be intricate, obscure or doubtful, the proper mode of dis-
covering its true meaning is by comparing it with the other
sections, and finding out the sense of one clause by the words
or obvious meaning of another." *Co. Lit.* 381.

Then it is a rule of construction, that the whole is to be
examined with a view of arriving at the true intention of such
part. In interpreting clauses, we must presume words have
been employed in their natural and ordinary meaning. Chief
Justice Marshall, in the case of *Gibbons vs. Ogden*, 9. *Wheat.*
188, says: "The framers of the constitution, and the people
who adopted it, must be understood to have employed words
in their natural sense, and to have understood what they
meant." Story on Constitution, *Sec.* 453, says: "The true
sense in which words are used in a statute, is to be ascertained,
generally, by taking them in their ordinary and popular sig-
nification, or, if they be terms of art, in their technical signi-
fication."

This is but saying that no forced or unnatural construction
is to be put upon their language, and it seems so obvious a
truism, that one expects to see it universally accepted with-
out question.

The statute under consideration nowhere, from the title to
the conclusion, by implication or otherwise, makes any allu-
sion to setting apart or assigning any money to carry out its
provisions, except in *Secs.* 7 and 8, which read as follows:

"Sec. 7. The Commissioner shall receive, in compensation
of his services, a salary of twenty-five hundred dollars out of
money hereby appropriated, to be paid on the warrant of the
Auditor, in like manner as the salaries of other State officers
are paid. The necessary and contingent expenses of said
office shall be certified by the Commissioner to the auditor of
public accounts, who shall draw his warrant upon the Treas-
urer of State therefor."

"Sec. 8. That the sum of one hundred and twenty-five

thousand dollars be and the same is hereby appropriated for the payment of such claims as may be allowed by said Commissioner, and the salary and contingent expenses of said Commissioner."

The above sections are free from any technical words, and are clothed in language that is easy to be understood, clearly expressing the intention of the legislature. Why an attempt has been made, by interested, subtly and ingenious argument, to induce this court to force from this statute a meaning its framers never held, is beyond comprehension. But it is said that the finding of the Commissioner, under the act, is a judgment of a court of law against the State and, as such, the Auditor must draw his warrant for the amount on the treasury. The proposition is founded upon a statute in the "Chapters of the Digest," approved April 12, 1869, *Sec.* 4 of which is as follows : "The Auditor of State shall draw his warrant on the treasury for the amount of any judgment obtained against the State, and the same shall be paid out of any money in the treasury not otherwise appropriated by law."

While this enactment might perhaps be successfully attacked upon constitutional grounds, we do not deem it necessary, for the purpose of the determination of this cause, to enter into this question, that point not being directly raised, but will proceed upon the assumption that the above section is valid law.

Was the certified copy of the finding of the Commissioner, appointed under the provisions of the act of the legislature, approved March 28, 1871, as presented to the Auditor of the State, on the 4th day of December, 1871, a judgment obtained against the State?

Blackstone, in the 3. *Vol.* of his Commentaries, 395, says : "Judgments are the sentences of the law, pronounced by the *court*, upon matters contained in the record of an action before it. Judgments at law are final proceedings in an action at law, by which the *court* applies the law to the particular case prosecuted before it."

"A court, as understood in its full modern signification, consists of at least three constituent parts: the *actus*, *reus* and *judex*. The *actus*, or plaintiff, who complains of an injury done; the *reus*, or defendant, who is called upon to make satisfaction for it; and the *judex*, or judicial power, which is to examine the truth of the fact, to determine the law arising upon the fact and, if any injury appears to have been done, to ascertain and, by its officers, to apply the remedy." 3. *Bl. Comm.* 25.

It is claimed, that the act appointing the Commissioner and defining his duties does all this; that the claimant is the plaintiff; the State the defendant, and the Commissioner the judicial power.

While the claimant may be, with propriety, considered as a plaintiff, we can see no such propriety in saying the State is a defendant, as that word is used and understood as a constituent part of a court. Under the statute, no notice is provided to the State, by or through any of its officers, that this or any of the numerous claims, that have been allowed, were presented for adjudication—nor does it, in any way, provide the manner in which the interests or the rights of the State can be protected, excepting through the Commissioner. No chance or opportunity is given the Attorney General, the law officer of the State, or the Auditor, the custodian of its vouchers, or the Treasurer, the receiver of its public funds, to appear before this tribunal to inquire into the justness, the validity or foundation of any claim or demand made against it. Were we to hold that the legislature intended to create a new judicial court, whereby the defendant, the most, or at least an equally interested constituent part of it, was to be called upon to make satisfaction, without notice, and to be judged without a hearing, it would be rolling the spirit of constitutional liberty back behind the days of the Star Chamber, the members of which were the sole judges of the law, the fact and the penalty. In that infamous tribunal, the defendant had process served upon him, and could appear and make a statement of his case.

The proceedings and finding of the Commissioner, under this enactment, has been likened to the Court of Claims created by the act of Congress.

There can be no similarity whatever. The Act of Congress, creating that court, expressly provided that the United States should be represented before it by a solicitor and assistant solicitor, appointed for the government, by the same authority that appointed the judges. And the United States, as well as the claimant, are allowed the right of appeal. See original *Act, February* 24, 1855, 10 *Statutes at Large,* 12, *and amendatory Act of March* 3, 1863.

Then again, as to the judicial power of the commissioner. A portion of section one of the statute says: "The commissioner * * * shall give bond to the State in the sum of ten thousand dollars, with good and sufficient security, conditioned that he will *faithfully* and *honestly* discharge his duty."

Where can a statute, under any written constitution, be found that requires a judicial officer, strictly speaking, to give a bond for the *faithful* and *honest* discharge of duty? The statement of such a proposition bears its absurdity upon its face, and needs no argument to convince a thinking mind that the law making power of the State did not intend that the commissioner should be clothed with judicial power to that extent, as would render his decision as *res adjudicata,* and from which, as far as the State is concerned, there could be no appeal. Thus placing in one man's hands the unbridled power to unlock the coffers of the State, the receptacle of the people's money, and with an unstinted grasp take therefrom thousands of dollars or evidences of indebtedness, only so that these findings be based upon demands, arising under the acts of the militia, with no intermediate forum or officer to check his progress. We will do the legislative department no such injustice by such a ruling. These findings are only, as the statute says they are, "in the nature of a judgment, which the commissioner shall make and deliver to the claimant, who may file them with the Auditor of State, who shall

draw warrants upon the Treasurer of the State, payable out of the moneys hereinafter appropriated for that purpose."

The moneys *"hereinafter appropriated"* are the one hundred and twenty-five thousand dollars which the Auditor says has been expended; but counsel, for claimant, nevertheless, say, it is the duty of the Auditor to draw his warrant on the Treasurer for the amount so found. That it is not the province of this officer to know or say when the appropriation has been exhausted.

*Section 18, Chapter 2, Gould's Digest* says: "No such warrant shall be drawn by the Auditor or paid by the Treasurer, unless the money has been previously appropriated by law, nor shall the amount drawn for a period, under one head, ever exceed the amount appropriated by law for that purpose."

This statute has never been repealed, nor does it conflict with any of the provisions of the Constitution of 1868, but is in full force, and is express in terms, forbiding the Auditor from issuing a warrant, when there is no appropriation to draw against, or when an appropriation has been exhausted. Under any view of the case, if the facts, as stated by the Auditor in his response, are true, can we hold that it is not sufficient, in law, to prohibit the issuance of a writ of mandamus.

Demurrer overruled.

Gregg, J.—I fully concur with the court, except as to the original jurisdiction of this court.