## The State v. Williford et al.

EXEMPTION : *Against execution on bail-bonds.*

A bail-bond is a debt by contract, and the exemption laws apply as well to a judgment and execution on it as to executions for any other debt. The exemption laws are for the protection of the poor, and the state is therefore impliedly included in them, and subject to their operation.

APPEAL from *Washington* Circuit Court.
Hon. J. H. BERRY, Circuit Judge.

*L. Gregg,* attorney for appellant:

State not bound by general words in a statute. 32 *Ark.,* 51 ; 14 *Peters,* 315; 8 *Bush,* 225; 4 *Com.,* 143 ; 41 *N. H.,* 238 ; 54 *Ga.,* 36 ; 28 *Miss.,* 753 ; 8 *Phil. (Pa.),* 366.

Error to render judgment against the state for costs. 7 *Iredell,* 50. *State v. Kinne,* 41 *N. H.,* 238, discusses and

settles this question; 5 *How.*, 29; 2 *Wheat*, 395; 3 *Crouch*, 73; 12 *Wheat*, 546.

*B. R. Davidson*, for appellee:

State, in many cases, bound by general statutes. 1 *Black. Com.*, 261; *Bacon's Abridgment, Title "Prerogative;" Brown's Legal Maxims*, 73, 75; 1 *Kent Com.*, 460; *Com. Dig., Title "Parliament;"* 14 *Peters*, 315; 8 *Bush*, 225; 7 *T. B. Monroe*, 443; 1 *Iredell*, 50; 4 *Cow.*, 143; 41 *N. H.*, *258*; 1 *Watts*, 54; 54 *Ga.*, 36.

The exceptions should have a liberal construction. 40 *Ga.*, 555; 13 *Iowa*, 122; 46 *N. H.*, 44; 28 *Vt.*, 674; 36 *Vt.*, 271; 24 *Conn.*, 338; 10 *Cal.*, 296; 15 *N. Y.*, 494; 45 *Miss.*, 178; 33 *Wis.*, 510; 25 *Ill.*, 610; 10 *N. H.*, 358; 61 *Ill.*, 450; 10 *Vt.*, 434; 31 *N. Y.*, 648.

The expression of "taxes" as an exception, excludes others. *See Const. of* 1874, *Art. IX, sec. 3.* Bail must be *over and above* exemptions. *Gantt's Digest, secs.* 1719, 1720; 12 *Bush*, 283; 62 *Ill.*, 13; 51 *Mo.*, 133.

ENGLISH, C. J. It appears from the transcript of the record in this case, that on the eighth of December, 1877, one William Williford was in custody before a justice of the peace of Washington county, charged with forgery and grand larceny, and was admitted to bail by the sheriff, under an order of the magistrate, in the penal sum of $500 for his appearance for examination on the tenth of the same month, and Elizabeth Williford and John Fletcher became his sureties in the bail-bond. That he failed to appear according to the condition of the bond, and there was a forfeiture.

That suit was brought on the bond, in the name of the state, against the sureties, in the circuit court of Washington county, and on the twenty-ninth of July, 1879, judg-

ment was rendered against them for $500, the penalty of the bond, and for costs.

That on the fifth of November, 1879, an execution was issued on the judgment, and on the twenty-ninth of the same month levied by the sheriff on a crib of corn supposed to contain 200 bushels, more or less, as the property of the defendants therein.

That the defendants severally scheduled the corn levied on with other personal property, as exempt from execution, before the clerk of the court, who issued a *supersedeas*, and the execution was returned, etc.

That at the January term of the circuit court, 1880, the state, by her prosecuting attorney, filed a petition, setting out the facts, and praying the court to quash the *supersedeas* issued by the clerk.

On the hearing of the motion, the court specifically found the fact to be " that the state recovered judgment against defendants on a bail-bond given in a criminal prosecution for $500 ; and while the judgment was in full force, an execution was duly issued thereon, and levied upon 200 bushels of corn belonging to defendants. That they respectively owned property, said Fletcher to the amount of $329.20, and said Williford $288 (including the corn, each claiming part of it), within said county of Washington ; and that they had duly scheduled and claimed the same as exempt from execution, and that the clerk who issued said execution had issued a *supersedeas* against said execution, upon which said 200 bushels of corn were released from said levy, and said execution returned unsatisfied."

It was agreed that Elizabeth Williford and John Fletcher were residents and citizens of Washington county, and each the head of a family, and that their schedules were in regular form, etc.

And the court declared the law to be: "That upon a judgment in favor of the state upon a bail-bond forfeited in a criminal prosecution, and an execution issued thereon, the defendants in such an execution have the same right to schedule their property against such execution as by law they have to schedule property levied upon an execution issued upon a judgment recovered in an action of debt by contract between private persons."

The court refused to quash the *supersedeas*, and the state took a bill of exceptions, and appealed.

"The personal property of any resident of this state, who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars, in addition to his or her wearing apparel, and that of his or her family, shall be exempt from seizure on attachment, or sale on execution or other process from any court, on debt by contract." *Art. IX, sec. 2, Constitution of 1874.*

The bail-bond in question was a debt by contract. Appellees contracted and bound themselves by the bond to pay the state $500, if their principal did not keep its condition.

The only question in the case is, were appellees entitled to the exemption claimed by them as against the state, which is not expressly named in the exemption clause of the constitution above copied?

It is an old maxim of the common law, that "the king is not bound by any statute, if he be not expressly named therein, unless there be equivalent words, or unless the prerogative be included by necessary implication; for it is inferred *prima facie* that the law made by the crown, with the assent of lords and commons, is made for subjects, and not for the crown; but this rule seems to apply only where the property or peculiar principles of the crown are affect-

ed; and this distinction is laid down, that where the king has any prerogative, estate, right, title or interest, he shall not be barred of them by the general words of an act, if he be not named therein. Yet, if a statute be intended to give a remedy against a wrong, the king, though not named, shall be bound by it; and the king is impliedly bound by statutes passed for the public good, *the relief of the poor*, the general advancement of learning, religion and justice, or for the prevention of fraud," etc. *Broom's Legal Maxims, 4th ed., pp. 84–5; marg. p. 51.*

In the United States the same principle has been held applicable to federal and state governments, not upon any notion of prerogative, for even in England, where the doctrine is stated under the head of Prerogative, this, in effect, means nothing more than that this exception is made from the statute for the public good, and the king represents the nation. The real ground is a great principle of public policy—which belongs alike to all governments—that the public interests should not be prejudiced by the negligence of public officers to whose care they are confided. *The United States v. Knight, 14 Peters, 315 ; Thompson on Homesteads and Exemptions, sec. 385.*

The rule was applied in *Cole v. White County, 32 Ark., 51,* where it was said: "It is also another well settled rule, that in the construction of statutes declaring or affecting rights and interests, general words do not include the state or affect its rights, unless it be specially named, or it be clear by necessary implication, that the state was intended to be included."

Section 1 of Article IX of the constitution provides, that "the personal property of any resident of the state, who is not married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of two hundred dollars, in addition to his or her wear-

ing apparel, shall be exempt from seizure on attachment, or sale on execution, or other process from any court, issued for the collection of *any debt by contract*," etc.

The next section, copied above, extends the exemption in favor of a married person, or head of a family, to personal property to the value of $500. This enlargement of the exemption was in favor of families.

It was a humane public policy for the benefit and protection of the poor, who are the largest class of communities. The purpose of the framers of the constitution was to secure them in the possession of the means of subsistence and of making a support. The exemptions of personal property in the two sections were *for the relief of the poor*, and acts for the relief of this class are within an exception to the above rule that the state is not embraced unless named.

In *Doe, ex dem, etc., v. Deavors, 11 Georgia, 79*, a case involving the question of the exemption of personal property from execution under a statute of Georgia, the court, recognizing the general rule that the state is not bound by a statute unless named, and the exceptions to the rule as stated in the old books, said: "In our judgment, the state falls within the operation of a public law, passed for the benefit of the poor, and the state is within the policy of our own legislation upon this subject-matter."

There the property exempted for the benefit of a family was levied upon under an execution for taxes. Here no personal property is exempt from sale for taxes, but *for debts by contract*.

In *The State of Missouri v. Pitts et al., 51 Mo., 133*, the state recovered a judgment against a surety on a forfeited recognizance, upon which an execution was issued, and levied on defendant's homestead, who claimed that it was exempt. The state was not named in the statute exempt-

ing homesteads, nor in the statute exempting certain personal property from execution. The court held that the statutes had a common object in view. That in the latter it was to allow the family, for their comfort and support, to keep certain necessary articles of personal property of which they could not be deprived, and in the former to have a secure and permanent home, free from the attacks of all creditors. That from the language in the enactments, and the history of the Missouri legislature on the subject, the court was of opinion that the state was included by implication, and did not stand in an attitude different from any other creditor.

There have been similar decisions in Illinois. *Conroy v. Sullivan, 44 Ill., 451; Loomis v. Gerson, 52 Ill., 13.*

There was a like ruling in *The Commonwealth v. Lay, 12 Bush, 283.*

In *Brooks v. The State, 54 Georgia, 37,* the court, recognizing the rule that the state was embraced by implication in the general words of a statute enacted for the support of the poor, held that the homestead of a defaulting tax-collector was not exempt.

No harm can come to the state from holding that sureties in a forfeited bail-bond may claim the benefit of the constitutional exemption of personal property as against her.

The statute makes it the duty of officers taking bail, to require sureties to make affidavit that they are residents of the state, and owners of visible property, over and above that *exempt from execution*, to the value of the sum in which bail is required, and that they are worth that amount after the payment of their debts and liabilities. *Gantt's Digest, secs. 1719–20.*

If the officer fail to discharge his duty, he is subject to removal. If the sureties make false oaths, they may be punished for perjury.

11—36

Fletcher had a wife and children. Mrs. Williford was a widow with children. Looking at their schedules, each of them seems to have owned a horse, a few hogs, some farming implements, household and kitchen furniture, part of the corn levied on, and one of them a cow and calf. The court found the aggregate value of their property to be $617.20. If all their property had been sold under the execution, it is probable it would not have brought more than the debt and costs, and the two families would have been left destitute—perhaps a charge upon the public, or objects of charity.

This is but a single example, but it illustrates the policy of the exemption clause of the constitution in question, and furnishes a reason for holding that the state is included by implication.

It is to be hoped, for the credit of appellees (and the officer who took the bail-bond), that they had more property when they executed the bond, and made the affidavits required by law, than they had when they filed their schedules.

The judgment must be affirmed.