THORNBROUGH, COMM. OF LABOR *v*. WILLIAMS, CHANCELLOR.

5-859            284 S. W. 2d 681

Opinion delivered December 12, 1955.

*Robert L. Tipton,* for appellant.

*Bailey, Warren & Bullion,* for appellee.

*McMath, Leatherman & Woods,* for intervenors.

PAUL WARD, Associate Justice. This appeal raises the question of the constitutionality of Section 2 of Act 86 of 1937, said § 2 being Ark. Stats., § 81-312. This

question comes to us in the manner and upon the facts and pleadings hereinafter set out.

The real parties in interest in this litigation are the Capitol Transit Company, an Arkansas Corporation owning the bus franchise in Greater Little Rock, and 158 of its former employees [members of Division 704 of the Amalgamated Union and intervenors] who left the employment because of a strike. On September 26, 1955 said employees, through their attorneys, filed individual claims before the Arkansas Department of Labor alleging that certain wages were due them from the said Transit Company. This petition was filed pursuant to said § 81-312 of the Ark. Stats. and attached thereto was a statement containing the names of each of the claimants showing the amount alleged to be due to each. The Commissioner of Labor, the appellant herein, set Monday October 10, 1955 at 10:00 A. M. for a hearing on said petition and gave notice thereof to the attorney for the Transit Company.

On October 7, 1955 the Transit Company filed in the Second Division of the Chancery Court of Pulaski County a petition asking said court to restrain and enjoin the said Labor Commissioner from proceeding under Ark. Stats., § 81-312, to determine the claims of the said 158 former employees. On the same date the appellee herein, the Judge of the said Chancery Court, issued an order restraining appellant from proceeding further in determining the rights of said employees on their claims against the Transit Company.

Thereupon appellant filed in this court a petition for a Writ of Prohibition directed to appellee.

*Petition treated as an appeal.* Since both parties have orally expressed to this court the desire that we pass upon the constitutionality of the statute involved as above noted regardless of any procedural matters involved we have chosen to treat the petition for a Writ of Prohibition as an appeal from the order of the Chancery Court. We are also authorized to do this under the

holdings in *Boyd* v. *Dodge, Chancellor,* 217 Ark. 919, 234 S. W. 2d 204. This procedure makes it unnecessary to consider the first argument in appellee's brief that "Prohibition does not lie."

*Appellee's contentions.* Appellee's over all contention is that the statute involved violates the Constitution of the State of Arkansas. In support of this contention appellee directs our attention to different provisions of the statute and to numerous reasons for that contention. It is urged that the statute violates Article 7, § 1 and Article 7, § 40 of the Arkansas Constitution; that the Legislature cannot delegate judicial power; that the statute denies the right of trial by jury; that the statute is vague, indefinite and inoperative, and; that the statute creates a presumption and provides for free legal services.

Before we discuss the above questions it is proper to point out the well established rule of construction of legislative acts to the effect that such acts are presumed to be constitutional. This rule which has been many times announced by this court is very well stated in *Baratti* v. *Koser Gin Co.,* 206 Ark. 813, 177 S. W. 2d 750. From page 816 of the Arkansas Reports we quote: "This court has always held that, before it may strike down an act of the Legislature on the ground of unconstitutionality, it must clearly appear that the act is at variance with the constitution, and that an act of the Legislature is presumed to be constitutional, and that any doubt on the question of constitutionality must be resolved in favor of the act."

Article 7, § 1 of the constitution vests the judicial power of the State in the Supreme Court, the Circuit Court, the County and Probate Courts and in Justices of the Peace. Section 40 of the same article provides generally that the jurisdiction in matters of contract is vested in Justices of the Peace Courts where the amounts involved are limited. It is appellee's contention that the statute under consideration is an attempt by the Legislature to invest an executive officer with judicial powers. It is true that appellant, the Labor Commis-

sioner, is an executive officer functioning in the Arkansas Department of Labor. The vital question presented therefore is: Are the duties performed by the Labor Commissioner under Ark. Stats., § 81-312, the exercise of judicial functions in violation of the constitutional prohibitions above mentioned? If the answer to the above question is in the negative it must necessarily follow that the statute does not violate those portions of the constitution above mentioned and that it does not constitute a delegation of judicial powers.

After careful consideration we have concluded that Ark. Stats., § 81-312, is not an unconstitutional delegation of judicial power by the Legislature. This section of the statute reads:

"From and after the passage of this act [§§ 81-311-81-315], upon *application* of either employer or employee, the Commissioner of Labor, or any person authorized by the Commissioner, shall have authority to inquire into, hear, and decide disputes arising from wages earned, and shall allow or reject any deduction from such wages. *Upon motion of either employer or employee,* the amount found to be due may be paid in the presence of the commissioner or person designated by him, [and] after final hearing by the commissioner or person appointed by him, he shall file in the office of the Bureau of Labor and Statistics [Department of Labor] a copy of findings and facts and his award. The amount of the award of the Commissioner of Labor shall be *presumed* to be the amount of wages, if any, due and unpaid to the employee. *If either employer or employee shall fail or refuse to accept the findings of the commissioner, then either shall have the right to proceed at law as now or hereinafter provided;* or if the claim is meritorious, and if within the discretion of the Commissioner the claimant's lack of financial ability entitles him to the services of the Bureau of Labor and Statistics [Department of Labor], the Commissioner of Labor in the name of the State of Arkansas for the use of such claimant *may institute action in any court of competent jurisdiction,* without paying costs or giving bond for costs, and shall be entitled to all remedies

now or hereinafter available to litigants in the prosecution of actions, and their enforcement, if successful, without paying costs or giving bond for costs; provided that nothing herein shall be construed so as to relieve an unsuccessful defendant from paying costs.'' [emphasis supplied]

Unlike appellee we cannot see in the above statute anything that deprives either an employee or an employer of his constitutional rights. In the first place the statute is not compulsory in that one of the parties must make an application to the Commissioner of Labor before that officer has any power to act. In the second place, once the Commissioner has made a finding, the losing party has a right to refuse to accept the Commissioner's finding. After such refusal neither party is bound and each party has a right to pursue his remedy in a court of law or, as the statute says ''they shall have the right to proceed at law as now or hereafter provided.'' It appears to us that actually the statute simply provides a forum in which the employer and employee may settle their differences if they so desire. Under this interpretation of the act it has been urged that the act is meaningless and useless, but we do not think so. Through the many years that this statute has been in existence it is not unreasonable to suppose that many small claims have been adjusted to the satisfaction of all concerned without having had to resort to the trouble and expense of court procedure which would otherwise have been necessary.

It is appellee's contention, and we agree, that notwithstanding the fact the claimants here are members of a labor organization they are in fact suing on a contract of employment which they had with the Transit Company. It is then stated that a suit on a contract is a common law action in the nature of *assumpsit* and that they are therefore entitled under the constitution to a trial by jury, and that the statute in question denies them that right. This contention is fully answered by what we have heretofore said. As pointed out either side, the employee or the employer, has the right to re-

sort to a regularly constituted judicial tribunal if it is so desired. In other words both parties have every right to a trial by jury under the provisions of the questioned statute that they had before the statute was enacted.

It is urged by appellee that the statute is unconstitutional because it is vague and indefinite. The main point stressed here is that the statute sets out no clear and definite provisions for the taking of an appeal. In this connection is quoted a portion of the statute stating in effect that if either party refuses to accept the finding of the Commissioner then he shall have "the right to proceed at law as now or hereafter provided." We think appellee is in error in considering this language to purport to provide a method of appeal. As already pointed out, the statute contemplates no appeal but provides instead that in case either party does not agree with the finding of the Commissioner he has the right to institute an original action in a court of law.

It is again argued that the statute is unconstitutional because it provides that the Labor Commissioner may furnish free legal services if he finds that certain claimants are in need thereof. Article 2, § 18 of the Constitution is cited by appellee which provides that "the General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." It is also contended that the statute is unconstitutional because of the language stating that "the award of the Commissioner of Labor shall be presumed to be the amount of wages, if any, due and unpaid to the employee." The contention in this connection is that this language shows that the Commissioner does in fact make a judicial finding and that a finding by the Commissioner in favor of an employee places a burden upon the employer which he must overcome in a later trial of the case.

We find it unnecessary to pass upon the validity of these last two contentions on the part of appellee for the reason that no such questions have arisen so far in this

case. Since it is not necessary to pass on these questions we deem it expedient to wait until they may be properly raised in a trial court and properly presented and briefed in this court. Section 7 of said Act 86 contains a severance clause so that if any portion of the act is held unconstitutional it will not affect other provisions in the act if they constitute a reasonable and workable entity.

We find that a few other states, including California, Indiana, New Mexico, and New York, have statutes similar to the ones under consideration here, but we do not find the constitutionality of any of them has been challenged in any court. We have therefore been unable to find any legal precedent to guide us here, and none has been called to our attention by either party. In view of this, and giving effect to the presumption of constitutionality, we are unable to find anything in Ark. Stats., § 81-312, here challenged which justifies us in holding it unconstitutional.

We call attention to the fact that § 1 of Act 86 of 1937 [now Ark. Stats., § 81-311], limits the jurisdiction of the Labor Commissioner to amounts not exceeding $200.00, and also to the fact that a few of the claims presented to the Commissioner in this instance exceed that amount. It is obvious, we think, that the Commissioner has no jurisdiction over such excessive amounts and that they should be stricken if objected to by the Transit Company.

It follows from what we have said that the injunction order of the trial court was erroneously made and must be voided. To that end the cause is reversed.

Justice McFADDIN concurs.

Justice MILLWEE dissents.

MINOR W. MILLWEE, J., dissenting. It is with considerable reluctance that I register my disagreement with the views of the majority in this case. Unquestionably the Legislature was prompted by high motives and a commendable desire to protect and advance the interests of a

segment of society woefully in need of such assistance in the enactment of Act 86 in 1937 when this country was emerging from one of its most disastrous depressions. Also, the present Commissioner of Labor has demonstrated a more conscientious and determined effort to effectively execute the duties and responsibilities of his position than is ordinarily employed. However, we are not concerned with the wisdom and expediency of the act in question, and the sole issue here is power of the Legislature to enact it. In my humble opinion Sec. 2 of Act 86 provides for an unconstitutional delegation of judicial power to an executive officer in violation of one of the fundamental principles upon which our republican form of government rests.

By the use of italics, the majority has done a clever job of minimizing the importance of that part of Section 2 which specifically authorizes the Commissioner, or any person designated by him, ''to inquire into, hear and decide [wage] disputes'' and make an ''award'' based upon ''findings and facts'' made by him ''after final hearing.'' Now it must be conceded that the power to hear and determine whether you owe me $200, or nothing at all, for wages earned is strictly a judicial function in that it involves the authority to determine purely legal and contractual rights between private parties.

Article 4 of the Arkansas Constitution declares that all governmental powers are divided among the legislative, executive and judicial departments, and each department is specifically prohibited from exercising any power belonging to either of the others except as expressly permitted in the Constitution. By Article 7 of the Constitution, judicial power is vested in the courts and the jurisdiction to hear and determine simple private contractual rights between individuals is vested exclusively in the circuit and justice of the peace courts, depending on the amount in controversy.

There are numerous situations in which it is not only necessary but entirely proper, in order that government may function, that an executive officer should be vested

with some judicial power. But it is only in those instances where such power is necessary to enable them to carry out their executive duties that this is true, unless such power is expressly granted in the Constitution. And this does not mean that an executive officer may usurp a purely judicial function which is exclusively vested by the people in the courts of this state. Nor does it lie within the power of the Legislature to change the nature of a simple judicial function by merely authorizing an executive officer to participate in its performance. Particularly should this be true where the executive agent clothed with such power is not required to be an attorney nor given the power to summon and swear witnesses or exercise other investigative power so essential to a **proper** performance of the judicial function.

While the precise issue presented here does not appear to have been decided, the New Hampshire Supreme Court in the famous case of *Re Opinion of the Justices,* 87 N. H. 492, 179 A. 344, 110 A. L. R. 819, held unconstitutional a very similar act which empowered an executive tribunal to hear and determine disputes arising out of motor vehicle accidents on the state's highways. After citing state constitutional provisions similar to our own, the court said: ''In the connection between the departments some overlapping is permissible, and there is a region of authority, alternative and concurrent, the boundaries of which are fixed by no final rule. As a rule which meets some situations, when an executive board has regulatory functions, it may hear and determine controversies which are incidental thereto, but if the duty is primarily to decide questions of legal right between private parties, the function belongs to the judiciary. Courts of justice, in their popular sense, may not be set up and established in the executive organization. They pertain exclusively to the branch of the judiciary.

''Under this rule the grant or reservation of judicial review of the decisions of an administrative board does not change the character of the decisions. If they are of judicial nature, because performed in the exercise of the

strict judicial function, an undertaking to give authority to the courts to review them and to correct the board's errors of law does not validate the board's authority. An administrative board may proclaim only administrative judgments. If they may be judicially reviewed, the right to have them reviewed does not transform them into judicial judgments, although the review and action therein is judicial. But a valid administrative judgment has the same force of obligation and finality as a judicial one. The view sometimes adopted that the right of appeal to the courts, either in wide or limited measure, saves action of an executive board from a valid charge of judicial invasion is not considered to be sound in principle. Authority to correct its errors does not alter the character of its undertaking. 'The nature of the final act determines the nature of the previous inquiry.' *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 227, 29 S. Ct. 67, 70, 53 L. Ed. 150. . . .

"A public interest to set up in the executive department a court of justice does not warrant a violation of the constitutional order prohibiting it. However much the vesting of the control of private litigation in an administrative board may be thought to aid in the maintenance of some public policy, it is not permissible. It is as much forbidden as it is to require a court to take on executive functions. An administrative officer in the discharge of his duties may have occasion to interpret and apply a law in order to enforce it, but he can have no such occasion in order to determine the rights of private litigants, since he may not be constitutionally authorized to take jurisdiction in respect to them.

"The consent or willingness of the litigants to submit their disputes to the official or board is beside the point. The Constitution denying the power of the Legislature to confer jurisdiction, it may not be conferred by private authority . . ."

Under these fundamental principles so aptly stated by the New Hampshire court, it seems crystal clear that in any case where the power of an agency is one primarily

to hear and determine a simple question of contractual rights between private parties, the function is purely judicial and expressly delegated by the people to the courts. This seems to be the consensus of the authorities generally. 42 Am. Jur., Public Administrative Law, Sec. 60; 73 C. J. S., Public Administrative Bodies and Procedure, Sec. 47. See also, 36 Harvard L. Rev. 422. While the restrictive construction placed on the act by the majority renders it practically useless, still we are dealing with a basic issue of constitutional government, and if the Legislature may legally do what is done in Act 86, the encroachment on judicial power and the usurpation of authority by an executive bureaucracy might become both limitless and unbearable.

While injunctive relief ordinarily must await the exhaustion of the administrative remedy, such is not the case where the relief sought is against a statute that is unconstitutional and void on its face. 73 C. J. S., Public Administrative Bodies and Procedure, Sec. 45; *Shellnutt* v. *Ark. State Game & Fish Comm.*, 222 Ark. 25, 258 S. W. 2d 570. That is the situation here, and Sec. 2 of Act 86 is fundamentally invalid. It necessarily follows that the chancellor correctly issued the restraining order.