POTTS v. HAY.

5-1551                                    318 S. W. 2d 826

Opinion delivered December 22, 1958.

*Joseph C. Kemp & Gardner A. A. Deane, Jr.,* for appellant.

*McMath, Leatherman & Woods,* for appellee.

GEORGE ROSE SMITH, J. This is a representative suit brought by the three appellees, as officers of the Little Rock policemen's union, to enjoin the city offi- cials from enforcing Act 30 of 1957, it being asserted that the act is contrary to Amendment 34 to the Arkan- sas Constitution. William W. Leigh, as a citizen and taxpayer, filed an intervention and offered proof in de- fense of the statute. The chancellor held the act to be unconstitutional and issued a p e r m a n e n t injunction against its enforcement.

The evidence need not be recited in detail. The city and the intervenor adduced proof to show that the de- clared policies of the labor union contemplate that its members will support authorized strikes, refuse to cross picket lines, and in other respects adhere to a course of action contrary to the attitude of impartiality that the city expects on the part of its policemen. There was also testimony that 35 of the 162 members of the police force belong to the union and that the department as a whole suffered a loss of public esteem as a result of the union's having made a $500 contribution in support of a busmen's strike against their employer.

Amendment 34 reads in part: "No person shall be denied employment because of membership in or affilia- tion with or resignation from a labor union, or because of refusal to join or affiliate with a labor union, nor shall any corporation or individual or association of any kind enter into any contract, written or oral, to exclude from employment members of a labor union or persons who refuse to join a labor union." Section 1 of Act

30 declares that union membership by police officers is inconsistent with the discipline which their employment requires. Section 2 of the act provides that no person who is a member of a policemen's union shall be eligible to serve on any municipal police force and that union members currently serving shall be dismissed unless they sever their relationship with the union within thirty days.

If the constitutional amendment applies to public employees it cannot be doubted that the act is unconstitutional. The amendment requires that no person be denied employment because of membership in a labor union. The act requires that persons be denied employment as policemen because of membership in a labor union. The conflict is irreconcilable; the act must fall unless it can be said that public employment is not within the purview of the amendment. •

In insisting that an implied exception should be read into the amendment the appellants rely upon a rule of statutory construction, that in certain kinds of statutes general words do not include the state or its subdivisions unless that intention is stated expressly or by necessary implication. *Cole* v. *White County,* 32 Ark. 45; *Linwood & Auburn Levee Dist.* v. *State,* 121 Ark. 489, 181 S. W. 892. Although the rule is followed primarily in the interpretation of statutes, we recognized its applicability to a constitutional question in *State* v. *Williford,* 36 Ark. 155, 38 Am. Rep. 34. There the two appellees asserted the constitutional exemption of personal property to defeat a writ of execution upon a judgment in favor of the state. We concluded that no harm could come to the state if the debtors were permitted to claim their exemptions and accordingly held that the exemption clause in the constitution included the state by implication.

We perceive no compelling reason to believe that the people intended to exclude public employment from the positive, unequivocal command of Amendment 34: "No person shall be denied employment because of mem-

bership in . . . a labor union.'' The suggestion made by the appellants, that the public interest will suffer if policemen are allowed to exert ''union pressure'' upon the city, fails to take into account the relatively slight extent to which Amendment 34 restricts the power of the legislature.

The pertinent clause of the amendment deals only with the denial of employment on the basis of union membership. Nothing is said one way or the other on the subject of union pressure. Left untouched, for example, is the matter of striking against the government. As the Connecticut court pointed out, after a thorough review of the cases, every judicial decision on the subject holds that there is no right to strike against the government. *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 83 Atl. 2d 482, 31 A. L. R. 2d 1133. Yet in the same case the court was able to say, with complete consistency: ''In the absence of prohibitory statute or regulation, no good reason appears why public employees should not organize as a labor union.'' In like manner a Texas statute has been upheld which provides, on the one hand, that no person shall be denied public employment by reason of membership in a labor union, and, on the other, that collective bargaining contracts with public employees are void and that any public employee who participates in a strike forfeits his employment. *Beverly* v. *City of Dallas, Tex.,* Civ. App., 292 S. W. 2d 172.

We are not convinced that the bare fact of union membership on the part of police officers presents such a threat to the public welfare that an implied exception must be written into the unqualified language of Amendment 34. Quite the contrary, when the full implications of the appellants' argument are carefully examined, it seems clear that the suggested exception was *not* intended. One result of the amendment, perhaps the principal one, was to outlaw the closed shop. *Self* v. *Taylor,* 217 Ark. 953, 235 S. W. 2d 45. If the state and its subdivisions were meant to be exempted from the mandate of the amendment, there would be nothing in the con-

stitution to prevent the legislature from permitting policemen to maintain a closed shop, even though that type of organization is forbidden in private employment. Inconsistencies such as this can be avoided only by giving the amendment the effect that its plain words demand.

Affirmed.

McFADDIN, J., concurs.

ED F. McFADDIN, Associate Justice (concurring). Less than 60 days ago, I was designated to write the majority oninion in this case. I prepared such an opinion; but the majority did not approve my draft. So I now use as a concurring opinion the draft that I prepared. It uses the plural as "we hold" instead of the singular as "I submit", but it must be understood that it was prepared for a majority opinion. Here it is:

————

We have, here, a case in which a Labor Union is relying on the Right-to-Work Constitutional Amendment. The question presented is whether Act No. 30 of the 1957 Arkansas Legislature is void as being in violation of Arkansas Constitutional Amendment No. 34. The Act No. 30 of 1957 (hereinafter called "the Act") is captioned:[1] "AN ACT to Prohibit Persons Employed on

[1] The full text of the Act is: "Section 1. PURPOSE. The purpose of this Act is to protect the public peace and welfare by encouraging the undivided loyalty of municipal police officers to the public service which it is their duty to serve, by prohibiting such police officers from holding membership in or becoming affiliated with any policemen's labor union which might, on any occasion for any purpose, attempt to control or influence the relations of municipal police officers toward the municipality which they have undertaken to serve. It is hereby found and determined by the General Assembly that such membership or association by police officers is inconsistent with the discipline which such employment requires, and therefore is subversive to the police service and detrimental to the general peace and welfare.
"SECTION 2. Hereafter, no person who is a member of or affiliated with any policemen's union shall be eligible to serve on the police force of any municipality of this State. Any person who is serving on the police force of any municipality of this State and who is a member of or affiliated with any policemen's labor union shall be dismissed unless such person shall, within thirty (30) days after the passage of this Act, sever all relationship with such policemen's labor union.
"SECTION 3. Any person who is responsible for the payment of salaries or other compensation to municipal police officers in this State

Municipal Police Forces of the Various Municipalities of this State from Holding Membership in or Being Affiliated with any Policemen's Union; to State the Policy of this State in Regard to the Membership or Affiliation of Municipal Law Enforcement Officers in Policemen's Unions; and for Other Purposes.'' Section 1 of Amendment No. 34 (hereinafter called the ''Constitutional Amendment'') reads in part:

> ''No person shall be denied employment because of membership in or affiliation with or resignation from a labor union, or because of refusal to join or affiliate with a labor union; nor shall any corporation or individual or association of any kind enter into any contract, written or oral, to exclude from employment members of a labor union or persons who refuse to join a labor union    *    *    *,''

The appellees (plaintiffs below) are individuals and members of Local Union No. 1377 of County and Municipal Employees and are members of the Little Rock Police Department. They brought this action for and on behalf of themselves and as a class suit for the benefit of the other members of the local Union who are employees of the City of Little Rock Police Department. The appellants (defendants below) are the Chief of Police of Little Rock, the City Officials, and Members of the Civil Service Commission of Little Rock. The appellees sued to enjoin appellants from enforcing the Act No. 30, claiming that the appellants will dismiss appellees from employment as policemen of Little Rock because of Union membership. The prayer was that the Act No. 30 be declared void—as being in conflict with the Constitutional Amendment—and that appellants be enjoined from discharging appellees because of Union membership.

---

and who shall make payment to a person who under the terms of this Act is not eligible to serve on the municipal police force, shall be guilty of misfeasance in office and shall be punishable by a fine not to exceed $1,000.00 and shall be removed from his office or position in the municipal government.

"SECTION 4. All laws and parts of laws in conflict with this Act are hereby repealed."

W. W. Leigh intervened for himself and as a representative of taxpayers and employers. Evidence was heard. It was shown that the Policemen's Union was affiliated with the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), some of whose aims and objectives are: (1) to refuse to cross or interfere with a picket line established by an affiliated union; (2) to assist in promoting the effectiveness of any strike called by an affiliated union; and (3) in cases of strikes, to aggressively resist resumption of work or production by an employer through the use of non-union labor. It was furthermore testified that in a recent strike in Little Rock involving the transportation system and in which strike there was some violence, the Policemen's Union had contributed to the fund of the strikers; and that many people in Little Rock were of the opinion that the Policemen's Union did not maintain neutrality in the said strike. It was also shown that the official manual for the Little Rock policemen required of each member, *inter alia*:

> "In accepting the position of a police officer, you become an executive officer of the criminal laws of the State and the ordinances of the City, and a conservator of the public peace; your acts are at all times subject to the observation and criticism of the public; and on the standpoint where you commence and the course which you pursue depends not only the welfare of the community, but the credit of the department, as well as your own success as an officer and a man. You must never forget that your character is your capital. Deal honorably with all persons, and hold your words sacred, no matter when, where, or to whom given."

It was shown that unless the injunction issued, the City would have no alternative except to dismiss any policeman who belonged to the Union. The Chancery Court held that the Act No. 30 violated the Constitutional Amendment, and enjoined the enforcement of the Act. This appeal ensued. Splendid briefs have been filed by

the parties and the intervener, and a wealth of cases have been cited. For the appellants and the intervener it is most earnestly claimed that the State as a Sovereign is not within the inhibition of Amendment No. 34, and that the municipality is a subsidiary of the State and therefore entitled to the same immunity. On this and other points appellants and intervener cite, *inter alia: Thornbrough, Comm.* v. *Williams, Chancellor,* 225 Ark. 709, 284 S. W. 2d 641; *Baratti* v. *Koser Gin Co.,* 206 Ark. 613, 177 S. W. 2d 750; *Railway Mail Assn.* v. *Murphy,* 180 Misc. 868, 44 NYS 2d 601, 607; *United Federal Workers of America (CIO)* v. *Mitchell, District of Columbia,* 56 Fed. Supp. 621; *Christal* v. *Police Comm. of City and County of San Francisco,* 33 Cal. App. 2d 564, 92 Pac. 2d 416; *Perez* v. *Board of Police Comm. of L.A.,* 78 Cal. App. 2d 638, 178 P. 2d 537; Annotation in 31 ALR 2d 1145, 1154; *McNatt* v. *Lawther,* (Tex. Civ. App.) 223 S. W. 503; *San Antonio Fire Fighters Local Union No. 84* v. *Bell,* (Tex. Civ. App.) 223 S. W. 506; *CIO* v. *City of Dallas,* (Tex. Civ. App.) 198 S. W. 2d 143; *U. S.* v. *United Mine Workers,* 330 U. S. 258, 91 L. Ed. 884, 67 S. Ct. 677; *Cole* v. *White County,* 32 Ark. 45; *Lunsford* v. *City of Bryan (Tex.),* 297 S. W. 2d 115; and *King* v. *Priest* (1947), 357 Mo. 68, 206 S. W. 2d 547 (appeal dismissed 333 U. S. 852).

To attempt to review and distinguish all of the cases in the briefs would be a work of supererogation. We merely state our conclusions. In *State ex rel. Attorney General* v. *Irby,* 190 Ark. 786, 81 S. W. 2d 419, in considering constitutional language, Chief Justice Johnson, speaking for the Court, said:

"As a preliminary to a consideration of these questions, it may be said that we are irrevocably committed to the rule that the Constitution of this State should be construed as a frame of laws and not as an ordinary statute *(Pulaski County* v. *Irvin,* 4 Ark. 473; *State* v. *Scott,* 9 Ark. 270), and that where the language employed in the Constitution is plain and unambiguous the courts cannot and should not seek other aids of interpretation *(Clayton* v. *Berry),*

27 Ark. 227; *State* v. *Ashley*, 1 Ark. 513; *Ellison* v. *Oliver*, 147 Ark. 252, 227 S. W. 586); and that every word used should be expounded in its plain, obvious and common acceptation *(State* v. *Martin*, 60 Ark. 343, 30 S. W. 421; *Ex parte Reynolds*, 52 Ark. 330, 12 S. W. 570) * * *''

The foregoing language points to the result in the case at bar. The Constitutional Amendment says: ''No person shall be denied employment because of membership in or affiliation with . . . a labor union . . .'' Each of the appellees in this case is a *person;* and each of the appellees is about to be denied *employment* because of *affiliation with a labor union.* The words of the Constitutional Amendment are too clear to require the application of any rules of statutory construction such as the one urged here by the intervener, to-wit: that the Sovereign is not restricted by general statutes.[2] It is not a question of restricting the Sovereign by general statute: it is a question of the people having restricted the Sovereign by the clearest possible words in the Constitutional Amendment. When we view the language in the fundamental document (Constitutional Amendment No. 34) by which the people have given the State Government its powers, we see the broad and clear expressions used. It would be a most dangerous doctrine to say that the State (Sovereign) was not bound by the limitations imposed by the People and that, as here, the individual citizen is not entitled, as against the State, to the rights which the Constitution gives him. To hold that the State is not bound by Amendment No. 34 would lead inevitably to the next step—that the State was not bound by Art. 2, Sec. 22 of the Bill of Rights, which says

---

[2] The rule is stated in 82 C.J.S. 554 "Statutes", Sec. 317, in this general language: "Neither the government, whether federal or state, nor its agencies, are considered to be within the purview of a statute unless an intention to include them is clearly manifested; * * *" As pointed out in our present opinion, this is a rule of *statutory* construction. There are cases which hold that the general rules of statutory construction apply with equal force in matters of constitutional construction *(Shepherd* v. *Little Rock*, 183 Ark. 244, 35 S. W. 2d 361); but none of these rules of construction ever comes into use except when the words of the document are not clear. No rule of construction should ever be used to defeat the clearly expressed language of the document.

that private property shall not be taken, appropriated, or damaged for public use without just compensation. When the State rises above the people and seeks immunity against rights guaranteed the people, then our motto—"The People Rule"—will have come to an end, and the super-state will have arrived. The right to work in gainful employment is as necessary for human existence as the right to own property—else why did the great Declaration say, "life, liberty, and the pursuit of happiness"? So we hold that the State—its subdivision, the municipality in the case at bar—is bound by the language of the Constitutional Amendment No. 34 just as any other employer; and this holding on Amendment No. 34 distinguishes the case at bar from cases cited by the appellants and intervener, such as *McNatt* v. *Lawther* (Tex. Civ. App.), 223 S. W. 503, and *Perez* v. *Board of Police Com'rs,* 78 Cal. App. 2d 638, 178 Pac. 2d 537.

It has been said that such an application of Amendment No. 34 as here made renders it impossible for the State to exercise its police power for the general welfare. We, therefore, think it proper to point out that, even though under Amendment No. 34 the municipality cannot refuse to employ a policeman merely because he belongs to a Union, still the State has the right to enact a statute that would require every policeman, as a condition prerequisite to employment, to agree to forego the right to strike or to support a strike.[3] Law enforcement must go on in times of strikes; and to require public employees engaged in law enforcement to agree to forego the right to strike or support a strike as a prerequisite to employment is a matter which Amendment No. 34 does not prohibit.

---

[3] The Railway Labor Act (U.S.C.A. Title 45 Sec. 151 *et seq.*) has a provision which allows injunction against strikes, and that provision has been upheld: certainly police protection is as important as is transportation. Also, the Hatch Act (U.S.C.A. Title 5 Sec. 118-i) prohibits federal employees from political activities and it has been held valid: certainly abstaining from strikes by those employed in law enforcement is no more a burden than is abstention from political activities. (See also U.S.C.A. Title 5 Sec. 118-j for statute preventing strikes by government employees).